IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DUSTIN WEBER,

       Plaintiff,       OPINION AND ORDER

 v.

                            13-cv-00291-wmc

GREAT LAKES EDUCATIONAL LOAN
SERVICES, INC.,

       Defendant.

---

  Pursuant to 28 U.S.C. § 1331, defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes") removed this civil suit for alleged violation of the Wisconsin Consumer Act from the Circuit Court for Dane County. (Pl.'s Compl. (dkt. #1-1) 4-9.) Specifically, plaintiff Dustin Weber alleged that Great Lakes has violated the Wisconsin Consumer Act, Wis. Stat. § 427.104(1)(e), (g), (h) and (j), by calling his mother asking for his phone number on three occasions and by writing a letter to his attorney concerning the collection of the loans. *Id.* On April 4, 2013, Weber amended his complaint, asserting an additional claim under the Federal Debt Collection Practice Act ("FDCPA"). (Pl.'s Am. Compl. (dkt. #1-1) 60-65.)

  On May 3, 2013, Great Lakes filed a motion to dismiss Counts I-III of Weber's amended complaint, arguing that: (1) the federal Higher Education Act of 1965, 20 U.S.C. § 1071–99, and its implementing regulations preempt the Wisconsin Consumer Act with respect to federal loan debt collection; and (2) Weber has failed to state a claim under Wisconsin law. The court will grant in part and deny in part Great Lakes' motion to dismiss for the reasons discussed below.

BACKGROUND[1]

On September 2, 2010, plaintiff Dustin Weber received a Federal Direct Loan. (Pl.'s Am. Compl. (dkt. #1-1) ¶ 3.)  Great Lakes is a loan servicing organization that services student loans for the United States Department of Education's Direct Loan Program.  (*Id*. ¶ 2.)  During the course of collecting loan payments from Weber, Great Lakes made the following four contacts with Weber's mother and attorney:

- In June of 2012, Great Lakes called Weber's mother, informing her that Weber had an account with Great Lakes and asking for Weber's address and phone number. (*Id*. ¶¶ 4-6.)  Weber's mother gave Weber's current address to Great Lakes, but refused to disclose his phone number.  (*Id*. ¶ 7.)  In response, Great Lakes treated Weber's mother hostilely and sarcastically and hung up on her.  (*Id*. ¶ 8.)

- On August 20, 2012, Great Lakes called Weber's mother asking for Weber's phone number repeatedly and harassingly. (*Id*. ¶ 9.)  Weber's mother refused and informed Great Lakes that Weber is represented by Krekeler Strother, S.C., with respect to the student loan.  (*Id*.)

- In September of 2012, Great Lakes contacted Krekeler Strother, S.C., asserting that it has a right, and in fact an obligation, under the Higher Education Act ("HEA") to contact Weber's mother, notwithstanding any state laws to the contrary.  (*Id*. ¶ 11.)

---

[1] For the purposes of this motion, the court will construe all of Weber's factual allegations as true and draw all reasonable inferences in his favor.  Fed. R. Civ. P. 12(b)(6); *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

- On October 2, 2012, Great Lakes again called Weber's mother, aggressively and repeatedly asking for Weber's phone number. (*Id*. ¶ 12.)

Based on these contacts, Weber alleges three causes of action against Great Lakes under Wisconsin law. First, Weber claims that Great Lakes violated the Wisconsin Consumer Act, Wis. Stat. § 427.104(1)(e), (g), (h) and (j), by disclosing information affecting his reputation to his mother, communicating with his mother in a frequency and manner reasonably expected to threaten or harass Weber and his mother, engaging in other harassing conduct by contacting Weber's attorney, and claiming a right to collect a debt while knowing (or having reason to know) that the right does not exist. (*Id*. ¶ 18.) Second, Weber claims that Great Lakes engaged in "unconscionable conduct" because the contacts with Weber's mother were designed to circumvent Weber's lawyer. (*Id*. ¶ 22.) Third, Weber claims that he is entitled to punitive damages. (*Id*. ¶ 27.)

Great Lakes moves to dismiss Count I-III (the state law claims) of Weber's amended complaint. (Def.'s Mot. to Dismiss (dkt. #1-1) at 1.) Great Lakes contends that: (1) the cited provisions of the Wisconsin Consumer Act are preempted by the HEA; (2) Weber fails to state a claim; and (3) Weber is not entitled to punitive damages under Wisconsin law. (*Id.* at 17-25.)

OPINION

I. Preemption

State law is preempted under the Supremacy Clause of the Constitution in three circumstances: (1) when Congress has expressed its intent to preempt state law through

explicit statutory language (express preemption); (2) in the absence of explicit statutory language, when state law regulates conduct in a field that Congress intended the federal government to occupy exclusively (field preemption); and (3) when state law conflicts with federal law (conflict preemption). *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990). Great Lakes does not argue express preemption or field preemption apply to plaintiff's Wisconsin Consumer Act claims. Rather, Great Lakes argues conflict preemption, contending that the Act is preempted by the HEA and its regulations regarding loan collection, 34 C.F.R. § 682.411.[2]

Under conflict preemption, state law is preempted only to the extent that it actually conflicts with federal law, that is, when it is impossible for a private party to comply with both state and federal requirements, *see Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18 (1963), or state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941). Regulation to protect consumers is an area that is traditionally controlled by the states, *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 150, and therefore is entitled to a presumption against a finding of preemption, *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001).

Accordingly, the court asks the following two questions in analyzing the issue of preemption here: (1) whether Great Lakes can simultaneously comply with both the HEA implementing regulations and the challenged provisions of the Wisconsin Consumer Act

---

[2] Great Lakes asserts, and Weber does not dispute, that the regulations found at 34 C.F.R. § 682.411 govern collection of Weber's Direct Loan.

4

(Wis. Stat. § 427.104(1)(e), (g), (h) and (j)); and (2) whether these provisions stand as an obstacle to the accomplishment and objectives of the HEA.

As to the first question, Great Lakes can simultaneously comply with both the state and federal requirements concerning debt collection. The HEA and its regulations mandate that debt collectors engage in a series of due diligence efforts to collect defaulted loans. *See* 34 C.F.R. § 682.411. While these efforts include calling the debtor's personal references listed on the loan documents to obtain the debtor's contact information, Great Lakes could certainly have complied with this mandate without engaging in any abusive debt collection practice prohibited by Wis. Stat. § 427.104(1)(e), (g), (h) and (j). For example, Great Lakes could contact Weber's mother to obtain his telephone number, and further explain that it is a debt servicing agency calling about his student loans, without violating § (e), as none of this is information can reasonably be characterized as having a negative effect on Weber's reputation. Similarly, by calling during normal hours with reasonable frequency and proper manner, Great Lakes could seek Weber's telephone number without harassing or threatening Weber's mother, engaging in other harassing behavior, or claiming any rights that do not exist, thereby avoiding any violation of §§ (g), (h) or (i).

As to the second question, at least on the facts of this case, compliance with Wis. Stat. § 427.104(1)(e), (g), (h) and (j) would not hinder the objectives or accomplishment of the HEA's loan collection scheme. Great Lakes takes the position that *all* provisions of the Wisconsin Consumer Act are preempted with respect to collection of a Federal Direct Loan. Under its broad understanding of what it means to "hinder the objectives or

5

accomplishment" of the federal loan program, "*any* State law that would hinder or prohibit *any* activity taken by" a third-party collection agency with regard to a federal loan would frustrate the objectives of the HEA's collection provisions. (Df's. Br. (dkt. #5) at 10 (quoting *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124 (S.D. Cal. 2005)).

Great Lakes finds support for this proposition in *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996), and cases that rely upon it, but *Brannan* is not controlling and this court is not persuaded by its reasoning.[3] The federal regulations governing minimum collection efforts -- found at 34 C.F.R. § 682.411 -- were promulgated in support of the Federal Family Education Loan Program ("FFEL"), in which the federal government committed to guarantee student loans issued by private lenders. *See* 55 Fed. Reg. 40120-01; 20 U.S.C. 1071(a)(1). To protect its interest as loan guarantor of last resort, the federal government required participating private lenders to adopt minimum standards of loan collection activity, and directed the Secretary of Education to set the precise standards. 55 Fed. Reg. 40120-01; 20 U.S.C. 1082(a)(1); 20 U.S.C. 1071(a)(1)(D); 20 U.S.C. 1078(c)(2)(A).

The Secretary published 34 C.F.R. § 682.411 for this purpose, subsequently clarifying that the goal of the regulations was to "establish a uniform national minimum level of collection activity." 55 Fed. Reg. 40120-01. Although the regulations would

---

[3] In reaching its conclusion, the *Brannan* court purported to defer to an opinion letter issued by the Secretary of Education identifying areas of conflict between agency debt-collection regulations and state consumer protection laws. *Id.* However, the majority appears to misread the letter by overlooking several key phrases. *Compare id.* at 1263 (majority opinion) *with id.* at 1269 (Judge Fletcher's persuasive dissent). *Accord Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1123 (11th Cir. 2004) (criticizing *Brannan*); *Murungi v. Tex. Guaranteed*, 646 F. Supp. 2d 804, 808-09 (E.D. La. 2009) (same).

"preempt any State rule that would hinder or prohibit the collection actions required under the rules," the Secretary acknowledged the preemption to extend "no farther than is reasonably necessary to achieve an effective minimum standard of collection action." *Id.* This was consistent with the statute itself, which contains no indication that Congress intended the Secretary's regulations to have any broader preclusive effect. Eventually, Congress ordered that these same regulations would govern third-party collections for the Federal Direct Program in which Weber participated. 20 U.S.C. § 1087e(a)(1).

The regulations delineate specific collection efforts in the event of delinquency and are meant to confirm that due diligence will be exercised in the collection of loans covered under the program to protect the United States from the risk of unreasonable loss. *See* 20 U.S.C. § 1078(c)(2)(A), 34 C.F.R. §682.411. Likely, debt collectors might be most effective if given a free hand, assuming effectiveness is measured solely by maximizing total collections, and this effectiveness would, in turn, promote the government's interest in repayment. *See* 55 Fed. Reg. 40120-01 ("These regulations are designed to prevent defaults and the loss to the Federal Treasury . . . . ").

But the regulations do not authorize debt collectors to engage in abusive debt collection activities, and it is a stretch to say that rules prohibiting what a state deems an abusive collection practice obstructs Congress's goals under the HEA. Indeed, in the context of the overall FFEL program, it seems apparent that Congress' goal for the HEA

collections provisions was to ensure that lenders make a good-faith effort to collect, not to maximize loan repayment rates at all costs.[4]

As long as the required uniform minimum standards set forth in 34 C.F.R. § 682.411 can be reasonably achieved without violating state law, therefore more restrictive state consumer protection laws will not conflict with the federal purposes embodied in the HEA or its implementing regulations. Certainly, looking at the alleged facts of this case, it was reasonably possible for Great Lakes to comply with state and federal requirements simultaneously. Accordingly, Great Lakes' preemption argument fails with respect to the collection activities directed toward Weber and his mother.

## II. Failure to State a Claim

After finding no preemption, the next issue is whether Weber alleges sufficient facts to state a claim under Wisconsin law. A complaint will be dismissed under Fed. R. Civ. P. 12(b)(6) if the allegations do not state a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). Said another way, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

---

[4] If anything, interpreting the HEA to protective abusive debt collection practices would run counter to the FDCPA, which Congress separately enacted to prevent debt collectors from "using any false, deceptive, or misleading representation or means in connection with the collection of debts," or "using ujnfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692e and § 1692f. *See also* 15 U.S.C. § 1692d.

In reviewing the sufficiency of a complaint under the plausibility standard, the court accepts the well-pleaded facts in the complaint as true, but legal conclusions and conclusory factual allegations which merely recite the elements of the claim are not presumptively true. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The plaintiff must provide "some specific facts" to support the legal claims asserted in the complaint. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "The plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Many — but not all — of Weber's allegations fail to meet this plausibility standard.

### A. Weber's First Cause of Action: Illegal Debt Collection Activities

In Weber's first cause of action, he alleges that Great Lakes violated Wis. Stat. § 427.104(1)(e), (g), (h) and (j), which disallows a debt collector to:

*** 

> (e) Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation . . . ;

*** 

> (g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;

> (h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer;

***

> (j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist.

***

Many of Weber's allegations are actually legal conclusions or elements of a cause of action, which may be disregarded in assessing plausibility on a motion to dismiss. *Iqbal*, 556 U.S. at 681. As a result, Weber has failed to state a claim with respect to three out of the four regulation subsections quoted above. As to the claim under § (e), Weber alleges that Great Lakes disclosed information to his mother that would negatively affect his reputation by telling her "that [Weber] had an account with" Great Lakes.[5] But the fact that one has taken out student loans from the government (and thus has to deal with a loan servicer) is not a stain on one's reputation. The court is left to only speculate whether any harmful disclosures were made, as none are alleged.

Weber's claim under § (h) that Great Lakes engaged in "other conduct" reasonably expected to harass suffers from a similar defect. Great Lakes' initiative in contacting Weber's attorney to explain its legal position regarding its collection rights under federal law -- absent other misbehavior – appears an appropriate if not laudable step for a collection agent to take and is certainly *not* "harassing conduct." Similarly, Weber asserts that Great Lakes' letter to his attorney amounts to an attempt to enforce a right that Great Lakes knows does not exist in violation of § (j). If by invoking this regulatory section Weber means that Great Lakes is trying to enforce a nonexistent debt, he does not affirmatively allege that he owes no debt. If Weber means instead that Great Lakes

---

[5] In his brief, Weber says that he alleged that Great Lakes told his mother that his student loans were *unpaid*. Not true. Instead, that is merely how Weber characterizes his loans in the allegations. (Pl.'s Am. Compl. (dkt. #1-1) ¶18.)

10

has no "right" to contact his mother, that does not appear to be a problem § (j) was meant to remedy. In any event, there is no allegation or even suggestion in the complaint that Great Lakes "knew" it was without this right.

As to the supposedly harassing phone calls to Weber's mother in violation of § (g), however, Weber does appear to state a viable legal claim. Weber alleges that three calls were made between June and October. In the first call, Great Lakes "treated [Weber's] mother hostilely, and sarcastically and repeatedly asked why [Weber's] mother would not reveal [Weber's] phone number." In the second call, Great Lakes "harassingly and repeatedly ask[ed] for [Weber's] phone number." In the third call, Great Lakes "repeatedly and aggressively insisted that [Weber's] mother reveal [Weber's] phone number. (Pl.'s Am. Compl. (dkt. #1-1) ¶¶ 6, 9, 12.) Although these calls were infrequent and apparently made at a reasonable hour, the allegations regarding the "aggressive" behavior of Great Lakes' representative suffice to make out a plausible claim for harassment, if just barely. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). It is at least plausible that when more detail about the "aggressive" behavior is disclosed, a reasonable juror could find that harassment occurred.

### B. Weber's Second Cause of Action: Unconscionable Actions

With respect to his second cause of action, Weber alleges that Great Lakes engaged in "unconscionable acts" by continuing to contact his mother despite learning that he was represented by a lawyer. Furthermore, Weber alleges that such contacts were designed to: (1) circumvent Weber's lawyer and to bully and threaten Weber into


negotiating a disputed debt on his own; (2) unfairly take advantage of the lack of knowledge, ability, experience, and capacity of Weber; and (3) cause Weber to misunderstand the true nature of the disputed debt with Great Lakes. Indeed, as Weber argues it, all contacts with his mother and attorney were unconscionable and, therefore, Great Lakes' rights to collect its loans to Weber should be limited.

Weber points to no specific statute or authority as the basis for his cause of action, except for the language of Wis. Stat. § 426.108, which lists the factors the Secretary of the Department of Financial Institutions must consider in promulgating rules declaring specific conduct as unconscionable. Based on those factors, the Secretary has declared and prohibited four specific unconscionable practices: (1) discrimination in the extension of consumer credit, (2) issuing unsolicited credit cards, (3) sale of credit card numbers, and (4) engaging in auto brokering. *See* Wis. Admin. Code §§ DFI-WCA 1.85 – 1.88. Great Lakes' contact with Weber's mother, even after learning he had retained an attorney, is not covered by any of these four prohibited practices. Moreover, Great Lakes' conduct does not appear "unconscionable" even under the more general considerations listed in the statute.[6]

Weber concedes that Great Lakes contacted Weber's attorney discussing the HEA's preemption effect before contacting Weber's mother in October of 2012. Since

---

[6] Wis. Stat. § 426.108(1) and (7) provide that in promulgating rules declaring specific conduct in consumer credit transactions and the collection of debt from consumer credit transactions to be unconscionable, the Secretary must consider whether the practice unfairly takes advantage of the lack of knowledge, ability, experience, or capacity of customers, and whether the natural effect of the practice is to cause or aid in causing customers to misunderstand the true nature of the transaction or their rights and duties under the transaction.

Great Lakes had contacted Weber's attorney and expressed its legal opinion, the phone call to Weber's mother after such communication, at least by itself, does not plausibly suggest that Great Lakes tried to circumvent Weber's attorney, to unfairly take advantage of Weber's lack of knowledge, or tried to confuse or mislead Weber about the true nature of the student loan.[7]

### C. Weber's Third Cause of Action: Request for Punitive Damages

Finally, Weber asks for an award of punitive damages on the grounds that Great Lakes acted with an intentional disregard of Weber's rights to be free from harassment. Wisconsin does not recognize an independent cause of action for punitive damages. *Brown v. Maxey*, 124 Wis. 2d 426, 369 N.W.2d 677 (1985). Punitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action. *Brown*, 124 Wis. 2d at 431. Since Weber can proceed on one of his claims, and it remains to be seen whether the facts would justify an award of punitive damages, Great Lakes' motion to strike this request will be denied.

---

[7] This might be a different question had Weber alleged that counsel for Great Lakes attempted to contact Weber directly, but this is not his apparent allegation. On the contrary, Weber's focus is on contacts of others than himself. In addition, when Great Lakes challenged this cause of action in its motion to dismiss, Weber never responded, impliedly conceding that he had no claim in this regard.

ORDER

IT IS ORDERED that defendant Great Lakes Educational Loan Services, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. #4) is GRANTED IN PART AND DENIED IN PART consistent with the opinion above.

Entered this 30th day of July, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge